**In re Emad S. AHMED, Judith G. Ahmed, Debtors.**

**Bankruptcy No. 93–53790.**

United States Bankruptcy Court, D. Connecticut.

April 15, 1996.

---

Frederick A. Dlugokecki, Naugatuck, Connecticut, for Debtors.

William J. Ward, Naugatuck, Connecticut, for Respondent G & L Excavating, Inc.

---

## MEMORANDUM OF DECISION ON MOTION TO AVOID JUDICIAL LIEN

ALBERT S. DABROWSKI, Bankruptcy Judge.

This Memorandum of Decision is a companion to a Memorandum of Decision and Order on Objection to Claims of Exemption (hereafter referred to as the "Exemption Opinion") also entered this day. In the Exemption Opinion this Court determined the extent of the Debtors' entitlement to a homestead exemption pursuant to C.G.S. § 52–352b(t). This Memorandum of Decision undertakes the analytically distinct exercise of determining whether the Debtors may *avoid* the lien of a creditor whose claim arose prior to October 1, 1993.

### I. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine the matter on reference from the District Court pursuant to 28 U.S.C. § 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(O), *inter alia.*

### II. BACKGROUND

On November 29, 1993, the Debtors commenced the instant bankruptcy case through the filing in this Court of a joint voluntary petition pursuant to 11 U.S.C. § 302(a). Relief on said petition was simultaneously ordered by this Court. Details concerning the Debtors' Schedules and Statements are set out at length in Section II of the Exemption Opinion [1], and all facts set out in that Opinion are incorporated herein.

On July 29, 1994, the Debtors filed their "Motion to Avoid Judicial Lien Impairing Exemption". The Motion seeks to avoid a lien purportedly held by G & L Excavating, Inc. (hereafter referred to as the "Respondent") on the Residence. In support thereof the Motion alleges the following facts, which are not contested in the context of this mat-

ter. On July 9, 1993, the Respondent obtained a prejudgment attachment (hereafter referred to as the "Attachment") on the Residence in the amount of $15,000.00 through the recording of a duly authorized Certificate of Attachment. The value of the Residence is $180,000.00, and is encumbered by Respondent's $15,000.00 attachment and two prior mortgages in favor of Naugatuck Savings Bank which secure claims totalling $137,-819.12.

As noted in the Exemption Opinion, the Debtors have most recently claimed an exemption in the Residence pursuant to C.G.S. § 52–352b(t) in the amount of $42,180.88— their perceived equity in the Residence over and above the mortgage interests of Naugatuck Savings Bank. The Debtors claim that the Attachment is a judicial lien that impairs their claimed homestead exemption in the Residence, and consequently, they are entitled to avoid the fixing of that lien pursuant to Section 522(f) of the Bankruptcy Code. The Respondent argues that avoidance of its lien is not available to the Debtors because, *inter alia*, they are not entitled to claim a homestead exemption pursuant to C.G.S. § 52–352b(t) as against its claim.

### III. DISCUSSION

A debtor's ability to avoid the fixing of a judicial lien springs from the provisions of Section 522(f) of the Bankruptcy Code, which provided, in relevant part, that

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor *would have been entitled* under subsection (b) of this section, if such lien is—

(1) *a judicial lien....*

11 U.S.C. § 522(f) (1993) (emphasis supplied).

It is undisputed that the Attachment is a "judicial lien" within the meaning of Section 522(f). *See* 11 U.S.C. § 101(36). It is also undisputed that *if* the Debtors "would have been entitled" to an exemption under C.G.S. § 52–352b(t), then the Attachment impairs

---

1. Familiarity with the Exemption Opinion is assumed; and all defined terms therein carry the same meaning if and when used in this Memorandum of Decision.

**546**

that exemption entitlement. Thus the pivotal question posed in this Section 522(f) matter is whether the Debtors "would have been entitled" to an exemption under C.G.S. § 52–352b(t).

The Court is convinced that this question is controlled and ultimately resolved by its decision sustaining the Respondent's objection to exemption as set out in the Exemption Opinion. Nonetheless, the Court provides this Memorandum of Decision to address directly the implications of *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), an authority which arguably is germane only in a lien avoidance context. Then Chief Judge Robert L. Krechevsky's opinion in *Morzella* noted in a footnote that the pure exemption objection issues involved in that case did not "involve any of the issues addressed by the Supreme Court in *Owen....*" *In re Morzella*, 171 B.R. 485, 489 n. 4 (Bankr.D.Conn.1994). While Chief Judge Alan H.W. Shiff discussed *Owen* at length in his opinion in *In re Duda*, 182 B.R. 662, 670–71 (Bankr.D.Conn.1995), he did so only to dispose of the debtors' misplaced argument that *Owen* somehow compelled the provision of the homestead exemption, even in the absence of a lien avoidance contest. *Id.*

*Owen* is a pure lien avoidance case decided under Section 522(f). A shallow reading of *Owen* could lead one to conclude that liens can be avoided even when the subject exemption claim has been denied as against the lien creditor's claim, as in the instant case. In fact, when one follows *Owen*'s analytical process precisely, it becomes clear that lien avoidance is inappropriate under the facts of the instant case. In this regard, this Court cites with favor the well-reasoned discussion contained within Chief Judge Shiff's Opinion in *Duda*, to wit:

> ... *Owen* directed bankruptcy courts considering lien avoidance proceedings to "ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien." [*Owen*, 500 U.S.] at 312–13, 111 S.Ct. at 1837.

⁎ ⁎ ⁎ ⁎ ⁎ ⁎

> ... The first step under the *Owen* analysis is to determine whether, ignoring the particular lien in question, the debtor is entitled to an exemption. [citations omitted]. In *Owen*, had the judicial lien in question never existed, the debtor would have been entitled to claim the full homestead exemption. An attribute of the lien, i.e. that it attached before the property acquired homestead status, was the basis for the creditor's argument that it was not subject to avoidance.

> By contrast, in these cases are no circumstances under which the debtors would have been entitled to claim a $75,000 homestead exemption because state law defined the exemption so that it was not available to these debtors on the petition date as against pre-effective date claims. Because the Act is by its terms inapplicable to *unsecured* claims that predate its effective date, the unavailability of the exemption does not depend upon the existence of a particular judicial lien. [citation omitted].

*Duda*, 182 B.R. at 670–71.

Although the foregoing analysis of Chief Judge Shiff was explicitly addressed to the impact of the claimed homestead exemption upon the *unsecured* claims that were at issue in the cases before him, the analysis is equally dispositive as to the *secured* claim at issue in the instant case. Simply put, in the present case, *Owen*'s pivotal question—"whether avoiding the lien would entitle the debtor to an exemption"—must be answered in the negative. Avoidance of the Attachment would not entitle the Debtors to a homestead exemption under C.G.S. § 52–352b(t), since even if the Attachment were avoided, the homestead exemption is unavailable as against creditor claims, such as the Respondent's, which arose prior to October 1, 1993, as this and other courts of Connecticut jurisdiction have unanimously held.

## IV. CONCLUSION

For the foregoing reasons, the Debtors' Motion to Avoid Lien Impairing Exemption

shall be DENIED.[2]

2. Given the nature of the Court's disposition of the instant matter, it is unnecessary for the Court to address the Respondent's alternative arguments, to wit: (1) that the Debtors were estopped or otherwise barred from changing their exemption scheme election from federal to State; and (2) that the Debtors are barred from bringing the instant motion by virtue of this Court's denial for failure to prosecute of a previous lien avoidance motion premised upon a claim of homestead exemption under the federal exemption scheme.